UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                                    :
TACO, INC.,                                                                   :
                                                                                    :
                                        Plaintiff,                              :            24-CV-07041 (JAV)
                                                                                    :
                    -v-                                                            :            OPINION AND
                                                                                    :            ORDER
AMERICAN HOME ASSURANCE COMPANY,            :
                                                                                    :
                                        Defendant.                          :
-----------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Taco, Inc. ("Plaintiff" or "Taco") filed this civil action against their alleged

umbrella insurance provider, American Home Assurance Company ("Defendant"), for breach of

contract and breach of the covenant of good faith and fair dealing.  Plaintiff seeks declaratory

relief alongside compensatory, consequential, and punitive damages.  Defendant moves to

dismiss Plaintiff's third cause of action under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  For the reasons discussed below, the motion to dismiss is **GRANTED** in part and

**DENIED** in part.

## BACKGROUND

For purposes of this motion to dismiss, the Court accepts as true the following factual

allegations set forth in the complaint.  Plaintiff Taco is a manufacturing company headquartered

in Cranston, Rhode Island.  ECF No. 15 ("Am. Compl."), ¶ 6.  Taco manufactures hydronic-

based equipment, accessories and systems utilized in buildings.  *Id.*, ¶ 7.  Prior to the mid-1980s,

certain of the products manufactured by Taco may have contained asbestos gaskets or packing.

*Id.*, ¶ 9.  As a result, by the 1990s Taco had been named, usually as one of several defendant

companies, in thousands of asbestos-related personal injury lawsuits.  *Id.*, ¶¶ 10-11.  Taco refers

to these lawsuits as the "Underlying Claims." *Id.*, ¶ 11.

The alleged injuries in the Underlying Claims took place across many years and concerned events decades in the past. Taco therefore undertook a search to locate the various insurance policies that would have provided defense and indemnity coverage for the years in question. *Id.*, ¶ 14. Taco's search of its own records produced incomplete results. *Id.*, ¶ 15. As a result, Taco hired an insurance archeologist to reconstruct its coverage history. *Id.* Search efforts eventually uncovered copies of, or secondary evidence for, forty-one primary general commercial liability policies responsible for providing coverage to Taco during the relevant period. *Id.*, ¶ 16. Twenty-one out of the forty-one policies located were established with secondary evidence, because the actual policies could not be located. *Id.*, ¶ 17. In 2015, Taco entered into a formal confidential claims handling agreement with all of its primary carriers. *Id.*, ¶ 19.

In addition to discovering evidence for its primary policies, Taco also found umbrella and excess insurance policies alongside secondary evidence of umbrella and excess policies active during the relevant period. *Id.*, ¶ 20. The purpose of these umbrella and excess policies was to provide coverage once the relevant primary policies were exhausted. *Id.* One of the policies found was Umbrella Liability Policy Number BE2675073, allegedly issued by American Home to cover Taco during a three-year period from March 20, 1971, to March 20, 1974 (the "American Home Policy"). *Id.*, ¶ 21. Plaintiff alleges that the American Home Policy was an umbrella policy sitting above three primary policies issued by the St. Paul Fire and Marine Insurance Company (the "Underlying Primary Policies"). *Id.*, ¶ 22. The American Home Policy began with an annual coverage limit of $1 million which increased to $2 million by November 1972, and then to $10 million by March 1973. *Id.*, ¶ 24.

Plaintiff alleges that AIG, American Home's parent company, acknowledged the existence of the alleged American Home Policy during their initial communications regarding the Underlying Claims.  *Id.*, ¶ 25.  A letter addressed from AIG Domestic Claims Inc. ("AIG Domestic Claims") to Taco, dated June 20, 2006, stated that "this office is the authorized representative of American Home Assurance Company ('American Home'), under commercial liability policy no. 267-50-73 (3/20/71-74), issued to the named insured Taco, Inc. ('Taco') . . . ." *Id*.  Another letter from AIG Domestic Claims to Taco on July 20, 2007, acknowledged the alleged policy using this exact language.  *Id.*, ¶ 26.

On December 5, 2007, AIG Domestic Claims raised a question regarding the accuracy of the American Home Policy number.  *Id.*, ¶ 27.  In response, Taco's attorneys responded that the policy number was "obviously" legitimate and asked AIG to investigate the issue after suggesting the possibility of an erroneous digit.  *Id*.  In January 2010 Taco received a letter from the Claims Department at AIG's Chartis, Inc. stating that American Home had been unable to locate a copy of the American Home Policy or any record of its existence.  *Id.*, ¶ 28.  In August 2011, Taco sent AIG secondary evidence of the American Home Policy.  *Id.*, ¶ 29.  Taco received a response on November 20, 2012, from Resolute Management Inc. ("Resolute"), which had begun administrating and handling certain asbestos claims on behalf of American Home, stating that after conducting a search they had failed to find a copy of the American Home Policy in their records.  *Id*.  In a letter dated December 21, 2018, Taco requested information regarding the parameters of the search for the American Home Policy and American Home's document retention policies.  *Id.*, ¶ 30.  Resolute responded in a letter dated January 29, 2019, stating that a search was conducted under all affiliated AIG carriers; the letter did not provide any information regarding American Home's document retention policy.  *Id.*, ¶ 31.  Taco requested a meeting

with Resolute and AIG to discuss the secondary evidence of the existence of the American Home

Policy, and in October 2020, Taco's counsel met with both Resolute and AIG via Zoom. *Id.*, ¶¶

32-33. During the Zoom call, Taco's counsel requested that AIG and American Home

acknowledge the existence of the American Home Policy and their contractual obligations to

Taco; however, AIG refused to discuss the merits of the secondary evidence presented. *Id.*, ¶¶

34-35.

 Resolute sent Taco a letter on November 4, 2020, which concluded: "We have reviewed

the purported secondary evidence and have found that it is not sufficient to establish the

existence or terms of the alleged policy." *Id.*, ¶ 36. Taco responded by sending a Litigation

Hold Letter on November 10, 2020. *Id.*, ¶ 38. American Home has refused to be a party to a

revised claims handling agreement signed in July 2023 by Taco, its primary carriers, and most of

its umbrella carriers. *Id.*, ¶ 41.

## PROCEDURAL HISTORY

On January 10, 2025, Plaintiff filed the amended complaint, which asserts three causes of

action. The first seeks declaratory relief. Plaintiff asserts that, under the terms of the American

Home Policy, Defendant is obliged to defend and indemnify Taco from the damages in

connection to the Underlying Claims. Am. Compl., ¶ 51.

The second cause of action is for breach of contract. Plaintiff alleges that American

Home "has breached its obligations under the American Home Policy by wrongfully refusing to

defend and/or indemnify Taco for costs and damages incurred in connection with the Underlying

Claims." *Id.*, ¶ 58. Plaintiff seeks compensatory and consequential damages on this claim. *Id.*,

¶ 60.

Plaintiff's third cause of action asserts breach of the covenant of good faith and fair

dealing.  Plaintiff alleges that, under the American Home Policy, Defendant had a duty to:

> (1) act in good faith and deal fairly with Taco; (2) do nothing to interfere with the right of Taco to receive the benefits of the American Home Policy, including a zealous defense from defense counsel; (3) properly maintain the existence of all policies against which any claim may be asserted; (4) duly investigate the existence of all policies it issued; (5) give the interests of Taco as much consideration as its own interests; (6) exercise diligence, good faith and fidelity in safeguarding Taco's interests and the interests of those potentially injured persons who could assert a claim covered by the American Home Policy; (7) make no misrepresentation to Taco regarding the existence of the American Home Policy or otherwise; (8) settle underlying claims reasonably within its policy limits; (9) reasonably cooperate with Taco and its other insurers to provide defense and indemnity to Taco; (10) deal ethically with and not recklessly disregard Taco and persons who assert claims against Taco that may be covered under the American Home Policy; (11) fairly, timely, and accurately inform Taco with respect to the nature, existence and scope of Taco's insurance coverage; and (12) not deviate from industry practice regarding the acknowledgement and retention of, and the provision of coverage under, policies akin to the American Home Policy.

*Id.* ¶ 62.

Plaintiff claims that Defendant breached this duty because they "intentionally, recklessly or negligently destroyed its copies of the American Home Policy, as well as other liability policies issued to other insureds."  *Id.*, ¶ 65.  Additionally, Plaintiff alleges that Defendant "intentionally, recklessly or negligently failed to maintain or to comply with a document retention policy that would have required that Defendant retain a copy of the American Home Policy."  *Id.*, ¶ 63.  Plaintiff alleges that Defendant knew or should have known that destroying the American Home Policy, and other policies, increased the risk for injured third parties with potential claims against Taco, or other products-manufacturers, to never be able to recover compensation.  *Id.*, ¶ 66.  Defendant also allegedly breached the implied covenant of good faith and fair dealing by knowingly representing and acknowledging the existence of the American

Home Policy in writing to Taco in 2006 and 2007 and then recanting these acknowledgements by denying the existence of the American Home Policy. *Id.*, ¶ 67. Defendant therefore misrepresented the existence of the American Home Policy after they knew that it existed and that it had been destroyed. *Id.*, ¶¶ 68-69. Finally, Plaintiff argues that, because Defendant refused to cooperate in good faith with the other primary and umbrella insurance carriers, Plaintiff's coverage under those policies eroded quicker than it otherwise would have. *Id.*, ¶ 73. Plaintiff seeks substantial consequential and compensatory damages, in addition to punitive damages. *Id.*, ¶ 75.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the plaintiff is entitled to relief. *Id*. at 679.

In deciding a Rule 12(b)(6) motion, the Court "should assume [the allegations'] veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*. While a plaintiff is not required to assert detailed factual allegations to survive a motion to dismiss, the complaint demands more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. at 678. "Determining whether a complaint states a plausible claim will . . . be a context-specific task that requires the court to draw on its judicial experience and common sense." *Id*. at

679.

## DISCUSSION

Defendant moves to dismiss Plaintiff's third cause of action for failure to state a claim. ECF No. 16 ("Mot. to Dismiss") at 1.  Defendant argues that Plaintiff's action for breach of the implied covenant of good faith and fair dealing is duplicative of the breach of contract claim because it arises from the same operative set of facts.  ECF No. 17 ("Def. Br.") at 3.  In the alternative, Defendant seeks to strike Plaintiff's demand for an award of punitive damages for the third cause of action.  Mot. to Dismiss at 1.  Defendant argues that punitive damages require the demonstration of an independent tort under New York law and that New York does not recognize tort actions for bad faith denial of insurance coverage.  Def. Br. at 8.  The Court denies the motion to dismiss the breach of implied covenant claim, but agrees that punitive damages are unavailable.

### I.    Breach of Implied Covenant of Good Faith and Fair Dealing

"New York law implies in every contract a covenant of good faith and fair dealing.  The covenant prevents a party to a contract from destroying or injuring the right of the other party to receive the fruits of the contract, and incorporates any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the contract." *Gartner, Inc. v. HCC Specialty Underwriters, Inc.*, No. 20-CV-4885 (JGK), 2023 WL 1380290, at *4 (S.D.N.Y. Jan. 31, 2023) (cleaned up).

"[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013);  *see also Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 70 A.D.3d 423, 426 (1st Dep't

2010) ("The claim that defendants breached the implied covenant of good faith and fair dealing was properly dismissed as duplicative of the breach of contract claim, as both claims arise from the same facts and seek the identical damages for each alleged breach." (cleaned up)).  The question, then, is whether "the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract," or if the breach of the implied covenant is based upon distinct factual allegations.  *Spandex House, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 14 Civ. 4251 (PAC), 2015 WL 509678, at *2 (S.D.N.Y. Feb. 6, 2015).

Defendant argues that Plaintiff's breach of the implied covenant claim is duplicative of the breach of contract claim because it addresses "the same ultimate grievance" as the breach of contract in that it continues to allege "instances as to why American Home allegedly refused to defend and/or indemnify."  Def. Br. at 4.

Breach of the implied covenant claims require subtle but distinctly different facts than those utilized to establish breach of contract claims.  "To state a viable claim of a breach of the duty of good faith and fair dealing, the plaintiff must allege not that the contract's express terms were violated but that its purpose was subverted, depriving him of his reasonable expectations."  *CoraMed USA, LLC v. Alexion Pharms., Inc*., 695 F. Supp. 3d 251, 265 (E.D.N.Y. 2023) (quotations and citations omitted); *see also Butvin v. DoubleClick, Inc*., No. 99 Civ. 4727 (JFK), 2001 WL 228121, at *8 (S.D.N.Y. Mar. 7, 2001) (New York recognizes breach of implied covenant claims "in cases involving efforts by one party to a contract to subvert the contract itself.").  New York also permits breach of implied covenant claims to move forward alongside breach of contract claims in cases where the alleged conduct and the categories of damages sought differ.  *Ramapo Cent. Dist. v. New York Sch. Ins. Reciprocal*, 199 A.D.3d 881, 885 (2d

Dep't 2021). Additionally, New York courts have found breach of implied covenant claims to be valid and not duplicative of breach of contract claims even when there may be "some overlap in the facts," if the claim relies on different factual allegations and seeks different damages from that of the contractual claim. *N.Y. Botanical Garden v. Allied World Assur. Co. (U.S.) Inc.*, 206 A.D.3d 474, 476 (1st Dep't 2022).

Plaintiff alleges that Defendant breached its duty under the implied covenant of good faith and fair dealing by (1) intentionally, recklessly or negligently destroying its copies of the American Home Policy, (2) making intentional, reckless, or negligent misrepresentations to Taco regarding the existence of the American Home Policy, (3) failing to recognize the existence of the policy despite the secondary evidence presented by Taco, (4) increasing the risk for injured third parties with potential claims against Taco, and other insurers, to never recover compensation, and (5) refusing to cooperate in good faith with the other primary and umbrella insurance carriers. Am. Compl., ¶¶ 63-74.

Defendant argues that the aforementioned allegations are duplicative of those found in the breach of contract claim. The Court disagrees. The breach of contract claim rests on the allegation that American Home refused to "defend and/or indemnify Taco for costs and damages incurred in connection with the Underlying Claims." Am. Compl., ¶ 58. Specifically, American Home refused to be a party to a revised claims handling agreement signed in July 2023 by Taco, its primary carriers, and most of its umbrella carriers. *Id.*, ¶ 41. The facts under this allegation describe American Home's failure to execute the contractual terms of the American Home Policy and are materially different from the allegations supporting the breach of implied covenant claim. Plaintiff's breach of implied covenant claim rests on its allegation that Defendant "intentionally, recklessly or negligently destroyed its copies of the American Home

Policy, as well as other liability policies issued to other insureds." *Id.*, ¶ 65. This allegation alone is not a breach of the contractual terms under the American Home Policy, but rather a deliberate action taken by Defendant to injure Plaintiff's right to receive the "fruits of the contract." Plaintiff further supports its breach of implied covenant claim by alleging that Defendant made misrepresentations regarding the existence of the policy, failed to recognize the policy even after being represented with secondary evidence, refused to cooperate in good faith with the other primary and umbrella providers, and increased the risk of injured third parties with potential Underlying Claims to never recover compensation. *Id.*, ¶¶ 66-73. These allegations suggest a potential intentional subversion of the contract from American Home, as opposed to a failure to execute the terms of the contract itself. As such, the claims are not duplicative.

Defendant relies on *Gartner, Inc. v. HCC Specialty Underwriters, Inc.* to argue that implied covenant claims can be duplicative of breach of contract claims even when the alleged conduct in both causes of action is not identical. 2023 WL 1380290, at *5 (S.D.N.Y. 2023). That case is inapposite, however. The allegations in *Gartner* ultimately concerned the execution of the terms of the contract, rather than actions taken to subvert the contract itself. In contrast, the alleged destruction of the American Home Policy constitutes the type of arbitrary and unreasonable conduct that would prevent Taco from "receiv[ing] the fruits of the contract." *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 704 F. Supp. 3d 473, 498 (S.D.N.Y. 2023). Defendant's motion to dismiss the third cause of action is therefore denied.

## II.    Punitive Damages

Punitive damages are not generally available for ordinary breach of contract claims because they serve the purpose of vindicating public rights and not rectifying private wrongs. *Rocanova v. Equitable Life Assur. Soc'y of U.S.,* 83 N.Y.2d 603, 613 (1994). In New York,

plaintiffs requesting punitive damages for breach of contract claims must satisfy the so-called

"*NYU* factors:" "(1) defendant's conduct must be actionable as an independent tort; (2) the

tortious conduct must be of . . . egregious nature . . .; (3) the egregious conduct must be directed

to plaintiff; and (4) it must be part of a pattern directed at the public generally." *New York Univ.*

*v. Cont'l Ins. Co. ("NYU")*, 87 N.Y.2d 308, 316 (1995).  Applying these four factors, the Court

concludes that punitive damages are not available for Plaintiff's breach of the implied covenant

claim.

### A. Independent Tort Claim

This Court has jurisdiction over this case based on the diversity of the parties.  Am.

Compl., ¶ 4.  As such, it is the Court's role to interpret the facts and decide on the issue as a New

York state court would under New York law.  *19 Recordings Ltd. v. Sony Music Ent.*, 97 F.

Supp. 3d 433, 438 (S.D.N.Y. 2015).  On the question of punitive damages, "'where a lawsuit has

its genesis in the contractual relationship between the parties, the threshold task for a court

considering the defendant's motion to dismiss a cause of action for punitive damages is to

identify a tort independent of the contract, and that a tort obligation is a duty separate and apart

from the independent promises made." *Goode v. Charter Oak Fire Ins. Co.,* 803 N.Y.S.2d 18, at

*3 (Sup. Ct. 2005) (citation omitted).

While it is unclear whether New York law considers a breach of the implied covenant

claim to be an independent tort, "New York courts have repeatedly allowed claims for punitive

damages to go forward based on a breach of the covenant of good faith and fair dealing."

*Zicherman v. State Farm Fire & Cas. Co.*, 698 F. Supp. 3d 564, 571 (E.D.N.Y. 2023); *see also*

*Perlbinder v. Vigilant Ins. Co.,* 190 A.D.3d 985, 989 (2d Dep't 2021) ("An alleged breach of the

implied covenant of good faith and fair dealing may support an award of punitive damages.").  In

*Zicherman*, the court noted this ambiguity in New York law, but concluded that "because New York courts have allowed the violation of the covenant of good faith and fair dealing to be the basis for a punitive damages claim," it would deem this factor satisfied.  698 F. Supp. 3d at 572.

The Court likewise concludes that, in permitting claims for punitive damages to move forward based on breach of the implied covenant, New York courts have implicitly interpreted a breach of the implied covenant claim as meeting the required pleading standard for an independent tort.  As such, Taco satisfies the first factor of the analysis.

### B.  Egregious Nature

In New York, courts rely upon the factors outlined in *Walker v. Sheldon* to determine whether tortious conduct rises to the level of egregious that would satisfy the second factor. *NYU*, 87 N.Y.2d at 316.  In *Walker v. Sheldon,* the New York Court of Appeals held that "there may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability."  10 N.Y.2d 401, 405 (1961). The court emphasized the deterrence role punitive damages play in instances where actors "who deliberately and cooly engage in a far-flung fraudulent scheme, systematically conducted for profit, are very much more likely to pause and consider the consequences if they have to pay more than the actual loss suffered by an individual plaintiff."  *Id.*

Plaintiff alleges that Defendant intentionally, recklessly, or negligently destroyed the American Home Policy and refused to acknowledge the existence of said policy after more than a decade of requests from Taco.  If these allegations are true, Defendant owes Taco millions of dollars to cover the costs stemming from the numerous Underlying Claims that took place during the coverage period.  It is very likely that a New York court would find that destroying essential documents and denying the existence of such documents to avoid paying out millions of dollars

to Plaintiff and the beneficiaries of the underlying claims involves high moral culpability.

Indeed, in *Schlusselberg v. New York Cent. Mut. Fire Ins. Co.*, by finding that the defendant

insurance company did not engage in egregious conduct because it "did not disclaim or deny

coverage," 206 A.D.3d 682, 684 (2d Dep't 2022), the court suggested that a bad faith denial

could rise to the level of egregious.  The Court finds that this *NYU* factor has therefore been

satisfied.

### C.  Directed at Plaintiff

The decades of communication between Plaintiff and Defendant alleged in the First

Amended Complaint are sufficient to make out a claim that the conduct was directed at Plaintiff.

As a result, the third of the *NYU* factors is met.

### D.  Directed at the Public

It is on the last of the *NYU* factors, however, that Plaintiff's claim falters.  As damages

may only be appropriate when a defendant has been alleged to harm the public broadly,

"plaintiffs must show a pattern or practice of similar behavior."  *Zicherman,* 698 F. Supp. 3d at

573.  Plaintiff attempts to meet this test by pointing to its allegation that Defendant intentionally

disregarded the "rights of persons with potential personal-injury legal claims against Taco for

which Defendant's American Home Policy would provide potential coverage, thereby

constituting egregious harm to both Taco and the general public."  Am. Compl., ¶ 74.  Plaintiff

also alleged that in addition to destroying the American Home Policy, Defendant destroyed

"other liability policies issued to other insureds."  *Id.*, ¶ 65.  Plaintiff, however, offers no specific

factual averments elaborating on this conclusory statement.

More fundamentally, a claim for punitive damages cannot merely consist of a private

breach of contract dispute between insurer and insureds "with no greater implications."  *O'Keefe*

*v. Allstate Ins. Co.,* 90 A.D.3d 725, 726-27 (2d Dep't 2011) (quotations and citation omitted). The American Home Policy was not a consumer-oriented product, but rather a "standard-issue policy provided to an individual consumer." *Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 83 (1st Dep't 2001). Because the Complaint does not sufficiently allege conduct directed at the public, punitive damages are not recoverable by Plaintiff.

## CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss Plaintiff's third cause of action is DENIED. Defendant's request to strike punitive damages from the third cause of action is GRANTED. The Clerk of Court is directed to terminate ECF No. 16.

SO ORDERED.

Dated: August 21, 2025
      New York, New York

                                      JEANNETTE A. VARGAS
                                      United States District Judge